IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

FELICIA PARKS                                                                                       PLAINTIFF

V.                                                                               CAUSE NO.: 3:11CV072-SA-DAS

CITY OF OXFORD, MISSISSIPPI;
JOHNNY SOSSAMAN, in his official and individual
Capacities; BAPTIST MEMORIAL
HOSPITAL-NORTH MISSISSIPPI, INC., and
JOHN DOES 1-10                                                                                   DEFENDANTS

MEMORANDUM OPINION

Plaintiff filed this lawsuit on June 6, 2011, alleging she was transported to Baptist Memorial Hospital – North Mississippi (BMH-NM) against her will and administered medical treatment for which she did not consent. The City of Oxford and Officer Johnny Sossaman (the Municipal Defendants) filed a Motion to Dismiss, or Alternatively, Motion for Summary Judgment [13]. Plaintiff contended she needed discovery to address certain issues raised by that motion. The Court granted the request, discovery was taken, and the parties supplemented the record based on those findings. After reviewing the motions, responses, record, rule, and authorities, the Court finds that the Municipal Defendants' motion is GRANTED, and the City of Oxford and Johnny Sossaman are dismissed as party defendants.

*Factual and Procedural Background*

On June 6, 2010, Felicia Parks' neighbor called 911 requesting an ambulance for Parks. On the call, the neighbor asserts that Parks shot up with cocaine, took at least four prescription Xanax pills, and is "trying to get into her car and we can't stop her . . . ." She further commented that she was concerned that Parks was "going to die." An ambulance was dispatched to Felicia

Parks' house. Police officer Johnny Sossaman, as well as up to two other officers, were also dispatched to Parks' residence as part of an "ambulance assist."

When the emergency personnel arrived at her residence, Parks refused medical treatment. Parks contends that Sossaman threatened to arrest her for disorderly conduct and failure to cooperate with law enforcement if she did not get into the ambulance and go to the hospital. Parks was taken to BMH-NM where she was subjected to medical tests and billed for medical treatment that she contends she did not consent to.

Parks brought this 42 U.S.C. § 1983 claim against the City of Oxford and Johnny Sossaman contending that she was illegally seized pursuant to the Fourth Amendment, civil conspiracy, and municipal liability for failure to train and supervise its police officers. The Municipal Defendants seek dismissal of the causes of action pursued against them on the basis of Sossaman's qualified immunity and Parks' failure to carry her burden pursuant to Federal Rules of Civil Procedure 12(b)(6) or 56.

*Legal Standards*

"The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff." Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010) (citing In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007)). Of course, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The court must not evaluate the likelihood of the claim's success, but instead ascertain whether the plaintiff has stated a legally cognizable claim that is plausible. Lone Star Fund, 594 F.3d at 387 (citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). Because in considering the motion to dismiss the Court has reviewed the parties' attached matters outside the pleadings which this Court shall not exclude, the motion shall be considered a motion for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Weaver v. CCA Indus., Inc., 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322, 106 S. Ct. 2548. The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. Id. at 323, 106 S. Ct. 2548. Under Rule 56(a) of the Federal Rules of Civil Procedure, the burden then shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548; Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275, 282 (5th Cir. 2001); Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995).

3

*Discussion and Analysis*

The first issue the Court must address is whether qualified immunity protects Officer Sossaman. Section 1983 provides a cause of action against any person who, under color of law, deprives another "any rights, privileges or immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. However, the doctrine of qualified immunity shields a governmental official from civil liability for damages based upon the performance of discretionary functions if the official's acts did not violate clearly established constitutional or statutory law of which a reasonable person would have known. Easter v. Powell, 467 F.3d 459, 462 (5th Cir. 2006). Qualified immunity applies when a government official reasonably could have believed that his actions were legal. Morgan v. Swanson, 659 F.3d 359, 370 (5th Cir. 2011)(en banc). "This immunity protects all but the plainly incompetent or those who knowingly violate the law . . . ." Id. at 371. Therefore, a court should not deny immunity unless "existing precedent must have placed the statutory or constitutional question beyond debate." Id. (quoting Ashcroft v. al-Kidd, --- U.S. ---, 131 S. Ct. 2074, 2083, 179 L. Ed. 2d 1149 (2011)).

To determine whether a defendant is entitled to qualified immunity, this court engages in a two-pronged analysis, inquiring (1) whether the plaintiff has alleged a violation of a constitutional right and, if so, (2) whether the defendant's behavior was objectively reasonable under clearly established law at the time the conduct occurred. Easter, 467 F.3d at 462. If the plaintiff fails to state a constitutional claim or if the defendant's conduct was objectively reasonable under clearly established law, then the governmental official is entitled to qualified immunity. Id. Once the defendant has invoked qualified immunity, the plaintiff has the burden of demonstrating that the defendant is not entitled to qualified immunity. Freeman v. Gore, 483 F.3d 404, 410 (5th Cir. 2007).

Parks argues she was illegally arrested without probable cause[1] and seized by being forced into the ambulance and administered unwanted medical treatment. She further argues that the Municipal Defendants engaged in a civil conspiracy to subject her to unwanted medical treatment, and that the City of Oxford failed to train its officers in procedures to follow under the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd, *et seq*.

*Arrest Without Probable Cause*

It is undisputed that Parks has a clearly established constitutional right to be free from arrest without probable cause. See Hebert v. Maxwell, 214 F. App'x 451, 454 (5th Cir. 2007). Therefore, if Sossaman did not have probable cause to arrest Parks, Sossaman's arrest of Parks violated her constitutional rights. Probable cause exists when, at the time of arrest, an officer "had knowledge that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime." Id. at 454 (quoting Mangieri v. Clifton, 29 F.3d 1012, 1016 (5th Cir. 1994)).

Sossaman contends he had probable cause to arrest Parks for violating Mississippi's prohibition against ingesting illegal narcotics. Parks neither disputes nor counters the fact that she did admit on the scene to ingesting cocaine, a Schedule II narcotic, to law enforcement officers and at least one paramedic. Mississippi Code Section 41-29-139(d)(1) provides that it is unlawful for a person to ". . . inject, ingest, inhale or otherwise introduce into the human body a controlled substance in violation of the Uniform Controlled Substance Law." Accordingly, Sossaman had probable cause to believe that Parks violated this law based on her admission at the scene. Any arrest, therefore, was not in violation of Parks' constitutional rights.

---

[1] The Municipal Defendants assert that Parks was never technically "arrested." However, for purposes of this qualified immunity analysis, the Court views the facts as plaintiff has alleged.

*Seizing and Forcing into an Ambulance*

The Municipal Defendants bring to the Court's attention, Sullivan v. County of Hunt, Texas, 106 F. App'x 125 (5th Cir. July 21, 2004), and the Court finds that opinion persuasive. There, the Fifth Circuit held that evidence that the game warden was a suicide risk was sufficient to establish probable cause to seize and transport him to a mental health facility. Thus, the Fifth Circuit found the seizing officers were entitled to qualified immunity for their conduct, 106 F. App'x at 218 (citing Resendiz v. Miller, 203 F.3d 902 (5th Cir. 2000) and Anthony v. City of New York, 339 F.3d 129, 137 (2d Cir. 2003)). Indeed, in that case, the game warden's sister called 911, and while the exact nature of the call was in dispute, it was undisputed that the dispatcher advised the Sheriff's office that the game warden's family feared he would harm himself.

Here, it is undisputed that Parks' neighbor called 911 and informed the dispatcher that she feared Parks was going to die. Sossaman referenced the neighbor's concern for Parks' safety in his report. Sossaman noted that on the scene, Parks slurred her words and stumbled. He indicated she exhibited the traits of one using drugs and alcohol. Based on the representations of Parks and the neighbor that Parks injected cocaine in her bloodstream and ingested numerous prescription Xanax pills, Sossaman was reasonable in believing that Parks was a danger to herself and others. These facts are sufficient to justify Sossaman's actions in seizing Parks and forcing her into an ambulance.[2]

---

[2] Although the parties failed to brief the issue, the Court also raises the fact that had Sossaman actually arrested Parks as alleged by the Plaintiff, as a pretrial detainee, Parks would be entitled to medical treatment based on the factual scenario here. Indeed, Sossaman's denial of medical care in this situation, were Parks an arrestee, could amount to deliberate indifference, an Eighth Amendment violation.

6

*Administration of Unwanted Medical Treatment*

Parks additionally contends that Sossaman seized her by forcing her to receive medical treatment. In support of this allegation, Parks cites to the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd *et seq.* That statute imposes a duty to provide emergency medical care to any and all patients by participating hospitals. Subsection (b)(2) includes a provision allowing the refusal of consent to treatment. This subsection is presumably the statutory authority Parks relies on to establish her constitutional right to refuse treatment. To the extent that the EMTALA does not apply to police officers, or create any duties other than to hospitals with critical access departments, no § 1983 liability arises to Officer Sossaman with respect to the EMTALA. Moreover, Parks has failed to specify where a right to refuse medical treatment could be found in the Constitution. Thus, the Court finds there is no constitutional violation for Officer Sossaman forcing Parks to be medically treated.

*Civil Conspiracy*

Because the Court finds that Officer Sossaman did not violate Parks' constitutional rights in arresting her, forcing her into an ambulance, or forcing unwanted medical treatment upon her, the Court dismisses Parks' civil conspiracy claims against the Municipal Defendants. See Rodriguez v. Neeley, 169 F.3d 220, 222 (5th Cir. 1999) (finding that without a deprivation of plaintiffs' constitutional rights, no civil conspiracy claim could survive).

*Failure to Train*

Parks claims that municipal liability attaches because the City of Oxford failed to train its police officers on procedures to employ when confronted with someone who refuses medical treatment. Because the Court has determined that the EMTALA imbues no duty to police

7

officers, and there is no other attendant constitutional right to refuse medical treatment, Parks has failed to support her claim of failure to train.

*Conclusion*

Because Parks has failed to allege constitutional violations required for a Section 1983 claim, the Municipal Defendants' Motion to Dismiss, or in the Alternative, Summary Judgment [13] is GRANTED. Even if Parks had sufficiently raised constitutional violations, however, the Court finds that Officer Sossaman would be entitled to qualified immunity. Accordingly, the Municipal Defendants are dismissed from this case.

SO ORDERED, this the 9th day of January, 2013.

 **/s/ Sharion Aycock**
**U.S. DISTRICT JUDGE**